## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Walter Davidson,

        Plaintiff,

v.                                     Case No. 03-2396-JWL

Meridian Automotive Systems, Inc.,

        Defendant.

### MEMORANDUM & ORDER

Plaintiff, appearing pro se, filed suit against defendant, his former employer, alleging that defendant discriminated against plaintiff on the basis of his race and then discharged plaintiff after plaintiff complained about defendant's discriminatory conduct. Plaintiff's claims are asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion for summary judgment (doc. 46). As set forth in more detail below, the court grants the motion and dismisses plaintiff's complaint with prejudice.[1]

---

[1]On March 17, 2005, the court ordered plaintiff to show good cause why he had not filed a response to defendant's motion for summary judgment. On the same day as the court issued its order to show cause, plaintiff filed his response to the motion for summary judgment. Thereafter, in responding to the show cause order, plaintiff explained that he simply misunderstood the response deadline under the local rules. In such circumstances, the court will not treat defendant's motion as uncontested, will evaluate plaintiff's claims on the merits and will accept plaintiff's response (albeit untimely) to the motion for summary judgment. *See Murray v. Archambo*, 132 F.3d 609, 611 (10th Cir. 1998) (prior to outright dismissal for failure to comply with local court rules, court must consider the degree of actual prejudice to the defendant; the amount of interference with the judicial process; and the culpability of the litigant) (reversing district court's dismissal on uncontested motion where plaintiff's response to motion was received one day after the fifteen-day deadline and no prejudice to defendants

## I.    Facts

The following facts are related in the light most favorable to plaintiff, the nonmoving party. Defendant hired plaintiff as a forklift operator/materials handler on March 25, 2002.   Plaintiff's direct supervisor was Guy Henry.   Jeff Shaffer and Rod Shubert were other shift supervisors on plaintiff's shift.   According to plaintiff, Mr. Shubert harassed him on a regular basis, including monitoring his whereabouts in the plant, monitoring his break times, questioning his work and generally "hassling" him.   He further contends that Mr. Shubert used racially derogatory words and that, on one occasion, Mr. Shubert told plaintiff that "he can't wait to find ways to get all the colored forklift drivers out."   On several occasions during the fall of 2002, Doug Scott, defendant's plant manager, discussed with plaintiff the conflicts he was experiencing with Mr. Shubert.   While plaintiff advised Mr. Scott that Mr. Shubert was "picking on him" and "was out to get him," plaintiff did not provide Mr. Scott with any specific examples of Mr. Shubert's conduct and did not express any concerns about racial discrimination or otherwise suggest that Mr. Shubert was engaging in discriminatory conduct.[2]

could have resulted from this delay, nor could it have caused interference with the judicial process).

[2]While plaintiff denies this fact in his response, he does so without any citation to the record, as required by this court's local rules and Tenth Circuit precedent.  *See* D. Kan. R. 56.1(b) (party disputing fact contained in motion for summary judgment "shall refer with particularity to those portions of the record upon which the opposing party relies"); *McKibben v. Chubb*, 840 F.2d 1525, 1532 (10th Cir. 1988) ("When the party moving for summary judgment makes a showing that there is no evidence to establish an essential element of the claim, the burden then shifts to the party opposing the motion. That party must respond with evidence or citations to the record that dispute the motion for summary judgment.").  Plaintiff

On December 19, 2002, plaintiff approached Dixie Bingham, defendant's human resources manager, to request a form to use for writing out his concerns about a manager.  Although plaintiff intended to use the form to write a complaint about Mr. Shubert, he did not advise Ms. Bingham about the nature of his complaint and he did not identify the manager about whom he intended to complain.  For some reason, Ms. Bingham refused to provide the form.  Thereafter, a disagreement ensued between Ms. Bingham and plaintiff; Ms. Bingham then reported to Mr. Scott that plaintiff had been insubordinate to her.  Plaintiff was suspended pending an investigation and, on January 2, 2003, plaintiff's employment was terminated.  Mr. Scott and Ms. Bingham made the decision to terminate plaintiff's employment.

Additional facts will be provided as they relate to plaintiff's particular claims.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable

---

offers no evidence that he discussed discrimination concerns with Mr. Scott or otherwise advised Mr. Scott that Mr. Shubert was engaging in discriminatory conduct.  *See Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002) (party opposing summary judgment may not rely on mere allegations contained in its pleadings or briefs; must provide "significant probative evidence" supporting the allegations).

inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).   An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).   In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)).   To accomplish this, sufficient evidence pertinent to the material issue   "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;"

4

rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.    Plaintiff's Failure-to-Promote Claims

Plaintiff contends that defendant failed to promote him to two different positions for which he applied in August and September 2002.   As he has no direct evidence of discrimination, his claims are analyzed under the burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case in the failure-to-promote context, plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was qualified for the promotion; (3) despite his qualifications, plaintiff was not promoted; and (4) the position remained open or the position was filled.  *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).  If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was a pretext for discrimination. *See id.*

Assuming that plaintiff has established a prima facie case, he nonetheless cannot survive summary judgment on these claims as he has failed to set forth any evidence that defendant's proffered reason for failing to promote plaintiff is pretextual.    According to defendant, an employee is not eligible for a promotion unless, among other things, the employee has been in his

or her current position for at least 6 months and has no active written warnings.   In light of plaintiff's hire date, he was not eligible for a promotion until September 25, 2002–six months after his hire date.   Moreover, plaintiff received a final written warning on September 24, 2002. Defendant asserts, then, that plaintiff did not receive a promotion prior to September 25, 2002 because he had not been in his current position for the requisite 6 months and plaintiff did not receive a promotion after that time because he had an active written warning.   Defendant has satisfied its "exceedingly light" burden to provide a nondiscriminatory reason for its promotion decisions. *See Goodwin v. General Motors Corp*., 275 F.3d 1005, 1013 (10th Cir. 2002).

Plaintiff offers no arguments suggesting that defendant's proffered reasons for its promotion decisions are pretextual.   In fact, plaintiff's response to the motion for summary judgment is wholly devoid of any reference to his failure-to-promote claims.   It appears, then, that plaintiff has abandoned these claims.   *See Hinsdale v. City of Liberal, Kansas*, 2001 WL 980781, at *16 (10th Cir. Aug. 28, 2001) (affirming district court's conclusion that plaintiff had abandoned certain claims by failing to address those claims in response to the defendant's motion for summary judgment and concluding that the plaintiff's failure to respond was "fatal" to his claims).


In an abundance of caution, however, the court has carefully reviewed the record and finds no evidence suggesting that defendant's explanation concerning the promotion decisions is unworthy of belief.   Defendant's written policy concerning promotions, set forth in defendant's employee handbook, expressly states that an employee must be in his or her current position for six months before becoming eligible for a promotion and that an employee cannot have any active

written warnings.  While plaintiff asserts in the pretrial order that the probationary period was, in fact, only 90 days as opposed to 6 months, plaintiff offers no evidence in support of this assertion. *See Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002) (party opposing summary judgment may not rely on mere allegations contained in its pleadings or briefs; must provide "significant probative evidence" supporting the allegations).  There is no evidence before the court suggesting that defendant, despite its written policy, awarded promotions to employees with less than 6 months' service in a particular position.  There is no evidence that any of the decisionmakers with respect to the promotions that plaintiff sought harbored any racial bias whatsoever.

Because plaintiff has failed to demonstrate that defendant's explanation for its promotion decisions is unworthy of belief, or that its decisions were in any way based on plaintiff's race, summary judgment in favor of defendant is appropriate on plaintiff's failure-to-promote claims.

**IV.      Plaintiff's Racial Harassment Claim**

Plaintiff asserts that he was subjected to racial harassment by Rod Shubert, a third-shift supervisor.  To state a claim for racial harassment, plaintiff must establish that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).  In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). A few isolated incidents of racial enmity are insufficient to survive summary judgment. *Id.* (citing *Bolden*, 43 F.3d at 551). Rather, plaintiff must show "a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551.

In the pretrial order, plaintiff alleges that Mr. Shubert used "racially derogatory words" and that Mr. Shubert told plaintiff that "he can't wait to find ways to get all the colored forklift drivers out." For two reasons, these allegations are insufficient to create a fact issue on plaintiff's harassment claim. First, while plaintiff makes this assertion in the pretrial order, there is no evidence in the record supporting the assertion whatsoever. In fact, the record is wholly devoid of any evidence concerning any racial comments from Mr. Shubert or anyone else for that matter. Plaintiff did not testify in his deposition about any racially derogatory comments despite ample and thorough questioning from defendant. Plaintiff's allegations in the pretrial order, without more, are insufficient to create a fact issue on his harassment claim. *See Trainor*, 318 F.3d at 982 (party opposing summary judgment may not rely on mere allegations contained in its pleadings or briefs; must provide "significant probative evidence" supporting the allegations).

Second, even assuming that plaintiff had made these assertions by way of his own affidavit, such evidence would not demonstrate "a steady barrage of opprobrious racial comments" as required by the case law of the Tenth Circuit to show a racially hostile work environment. Plaintiff

has identified only one specific comment allegedly made by Mr. Shubert. One isolated remark is insufficient to establish a claim of racial harassment. While plaintiff also asserts that he heard Mr. Shubert "use racially derogatory words," he does not identify the frequency of such comments, he cites no specific examples of such words and he offers no details whatsoever about the words used by Mr. Shubert. In the absence of such evidence, the court attaches no significance to plaintiff's assertion. *See Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 800 (10th Cir. 1993) ("In order to defeat summary judgment, the nonmoving party must do more than assert conclusory allegations;" plaintiff must allege "concrete facts."); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1398 (10th Cir. 1992) (affirming summary judgment for defendant in § 1983 action where plaintiff was "unable to respond to the . . . motion for summary judgment with evidence of specific acts of sexual harassment;" "generalized allegations of continuing sexual harassment" were too "vague, non-time-specific and conclusory" to support claim).[3]

The remaining evidence offered by plaintiff in support of his claim is also insufficient to withstand defendant's motion. In his deposition, plaintiff testified that Mr. Shubert watched him closely, monitored his break times, questioned his work and, in general, gave him a hard time. Tenth Circuit precedent establishes that the conduct described by plaintiff simply does not

---

[3]Plaintiff also states in his response to defendant's motion that he complained about two "racially inflammatory notes." Plaintiff, however, does not describe the notes, does not identify the author of the notes and simply does not give any detail whatsoever about these notes. Moreover, he does not point to any evidence in the record concerning these notes and the court can find none. He simply states, in one sentence in his brief, that he complained about the notes. This reference, vague and unsubstantiated by evidence in the record, cannot support plaintiff's claim.

9

constitute racial harassment.  *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214-15 (10th Cir. 1998) (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence demonstrated "little more than a collection of unrelated incidents" where he and his supervisor were "at odds"; simply monitoring an employee's conduct does not suggest that the purported harassment stemmed from racial animus).  Moreover, plaintiff admits that Mr. Shubert monitored closely the work of other employees, including Caucasian employees.  He further testified that "half the people in the warehouse" had problems with Mr. Shubert.

Plaintiff also submits the affidavits of Carolyn White and Mike Davis in support of his racial harassment claim.  The affidavits, however, simply do not create a genuine issue of fact with respect to plaintiff's claim.  Ms. White, a former employee of defendant and one of plaintiff's former supervisors, avers that Mr. Shubert made "frequent complaints" about plaintiff but that, in her opinion, plaintiff was a "good employee."  Ms. White does not aver that Mr. Shubert made any racial remarks or otherwise discriminated against plaintiff on the basis of his race.  Her belief that plaintiff was a good employee and her disagreement with Mr. Shubert's general complaints about plaintiff have no relevance to plaintiff's racial harassment claim.  Ms. White also avers that she overheard another supervisor, Gary Rowe, "brag" about "getting rid of an employee" and, according to Ms. White, Mr. Rowe stated, "[plaintiff's] next."  Ms. White avers that she "believes the statement was based on race."  Ms. White offers no facts to explain why she believes Mr. Rowe's statement was based on race, other than the fact that Mr. Rowe is Caucasian.  Ms. White's statement, then, is insufficient to create a fact issue on plaintiff's claim.  *See Trujillo*, 157 F.3d

at 1214-15 (evidence that plaintiff and supervisor were difference races was insufficient to show that conduct stemmed from racial animus); *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1231 n.11 (10th Cir. 2000) (subjective belief of discrimination is not sufficient to preclude summary judgment).

Mr. Davis's affidavit is similarly deficient.  Mr. Davis, a former employee of defendant and one of plaintiff's former coworkers, avers that he overheard a conversation between plaintiff and Jeff Shaffer, a supervisor, in which Mr. Shaffer told plaintiff that Mr. Shubert had asked him "Why are you trying to be friends with those people?"  According to Mr. Davis, both Mr. Shaffer and plaintiff told Mr. Davis that "they thought the comment was about [plaintiff's] race."  Assuming, for purposes of argument, that Mr. Davis's testimony were admissible, it is nonetheless insufficient to preclude summary judgment.  Mr. Shubert's comment, on its face, is not overtly racial and, in fact, it is entirely ambiguous.  While the court, or a jury, might be able to infer some racial animus from the statement if plaintiff had set forth evidence of race-based harassment on the part of Mr. Shubert, he has not done so.  In isolation, however, the statement does not create fact issue on plaintiff's harassment claim, despite the subjective beliefs of Mr. Shaffer and plaintiff.  *Compare Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (gender-neutral conduct in isolation may in fact be gender-based, but may appear so only when viewed in the context of other gender-based behavior; jury may draw an inference that the conduct is gender-based when a plaintiff introduces evidence of both gender-based and gender-neutral harassment); *see also Kendrick*, 220 F.3d at 1231 n.11 (subjective beliefs of discrimination are insufficient to preclude summary judgment).

11

Finally, plaintiff suggests in his response to the motion and in the pretrial order that several of his friends and coworkers overheard Mr. Shubert making racial comments. Again, plaintiff does not support this assertion with any evidence. As such, the court cannot consider plaintiff's assertion. *See Trainor*, 318 F.3d at 982 (party opposing summary judgment may not rely on mere allegations contained in its pleadings or briefs; must provide "significant probative evidence" supporting the allegations). In any event, plaintiff does not indicate that the purported comments were directed at him, that he himself heard such comments, or that he was even aware of these alleged comments during the relevant time period. *See Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir.1995) (plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment"); *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir.1998) ("second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff"). Moreover, plaintiff has not provided any evidence concerning the frequency of the alleged comments.

For the foregoing reasons, summary judgment is warranted on plaintiff's claim of racial harassment.


## V.    Plaintiff's Retaliation Claims

Plaintiff asserts in the pretrial order that defendant terminated his employment shortly after he complained about discrimination. Defendant contends that summary judgment in its favor is warranted as plaintiff has no evidence that defendant's proffered reason for terminating plaintiff's

employment is pretextual. The court agrees. As plaintiff has no direct evidence of retaliation, his claim is analyzed using the basic allocation of burdens set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). Under the *McDonnell Douglas framework*, plaintiff has the initial burden of establishing a prima facie case of retaliation, which requires him to show that he engaged in protected opposition to discrimination; he suffered an adverse employment action; and there is a causal connection between the protected activity and the adverse employment action. *See id.* If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See id.* If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was a pretext for retaliation. *See id.*

In support of its motion for summary judgment, defendant contends that plaintiff cannot establish a causal connection between any protected activity he may have engaged in and his discharge. Specifically, defendant contends that neither one of the individuals who were involved in the decision to terminate plaintiff's employment–Doug Scott, the plant manager, and Dixie Bingham–had any knowledge that plaintiff had ever made any complaints, either formal or informal, of discrimination. It is beyond dispute that plaintiff, to establish a causal connection between his protected activity and his discharge, must show that the decisionmakers, at the time they decided to terminate plaintiff's employment, had knowledge of plaintiff's protected activity. *See Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)). Plaintiff has no evidence that Mr. Scott

13

or Ms. Bingham knew about any complaints of discrimination that plaintiff may have asserted. Moreover, there is simply no evidence in the record from which a reasonable jury could infer that Mr. Scott or Ms. Bingham knew about any protected activity in which plaintiff may have engaged. Finally, plaintiff, in his response, fails to even address the issue of whether the decisionmakers knew about any discrimination complaints or other protected activity on the part of plaintiff.  In fact, plaintiff's response fails to address his retaliatory discharge claim at all.  For these reasons, summary judgment in favor of defendant is appropriate on this claim.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1235 (10th Cir. 2000) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew of plaintiff's protected activity at time discharge decision was made); *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir. 1998) (same); *Williams*, 983 F.2d at 181 (same); *see also Hinsdale v. City of Liberal, Kansas*, 2001 WL 980781, at *16 (10th Cir. Aug. 28, 2001) (affirming district court's conclusion that plaintiff had abandoned certain claims by failing to address those claims in response to the defendant's motion for summary judgment and concluding that the plaintiff's failure to respond was "fatal" to his claims).

In addition to asserting a claim for retaliatory discharge, plaintiff asserts in the pretrial order that "things only got worse" after he complained about discrimination.  The court liberally construes plaintiff's assertion as a retaliatory harassment claim. In response to defendant's motion, plaintiff asserts that, after he complained about discrimination, Dixie Bingham refused to provide a particular form that plaintiff had requested and defendant failed to remedy the alleged discrimination.   Summary judgment on this claim is appropriate as the acts and omissions

described by plaintiff, taken together, simply do not rise to the level of an adverse employment action. In fact, the Tenth Circuit has repeatedly rejected harassment claims based on facts that are much more egregious than those set forth by plaintiff here. For example, in *Stover v. Martinez*, 382 F.3d 1064 (10th Cir. 2004), the Circuit rejected a retaliation claim based on a supervisor's alleged retaliatory harassment of the plaintiff because the plaintiff failed to demonstrate that her supervisors' conduct amounted to an adverse employment action. *See id.* at 1075. In that case, the plaintiff alleged that she was moved to an isolated office; she received a performance evaluation lower than previous performance evaluations; and she did not receive work commensurate with her experience. *See id.* Similarly, in *Amro v. Boeing Co.*, 232 F.3d 790 (10th Cir. 2000), the Circuit rejected a retaliatory harassment claim despite evidence that the plaintiff's supervisor, after attending a meeting in which the plaintiff advised his supervisor that he thought he was discriminating against him, called him a "fucking foreigner;" placed his hands around the plaintiff's neck and patted him down, apparently to ascertain whether the plaintiff had a tape recorder; threw drawing papers at the plaintiff, causing a paper cut on plaintiff's neck; demanded to search through a folder that the plaintiff was carrying; and, on two other occasions, spoke unpleasantly to the plaintiff. *See id.* at 795. According to the Circuit, the "unpleasant and vulgar" encounters that the plaintiff had with his supervisor were simply not "sufficiently negative and pervasive to create an adverse employment action." *See id.* at 798.

In *Heno v. Sprint/United Management Co.*, 208 F.3d 847 (10th Cir. 2000), the Circuit rejected the plaintiff's "retaliatory harassment" claim where the plaintiff failed to demonstrate that her supervisor's conduct amounted to an adverse employment action. *See id.* at 857-58. There,

the plaintiff showed that her desk was moved to a different location; her telephone calls were monitored; her supervisor and coworkers acted in a "chilly" manner towards her, which made her feel isolated; the human resources department refused to further investigate her complaint once they found out she filed an EEOC complaint; and her supervisor suggested that she might wish to transfer to another department because her department was shifting to a commission format in which the plaintiff had previously struggled.  *See id.* at 857. Affirming the district court's grant of summary judgment, the Circuit stated:

> These facts do not rise to the level of an adverse employment action. "Retaliatory conduct other than discharge or refusal to hire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'"  Ms. Heno was working in the same job, for the same pay, with the same benefits. Moving her desk, monitoring her calls, being "chilly" towards her, and suggesting that she might do better in a different department simply did not affect Ms. Heno's employment status.

*See id.* (alterations in original) (citation omitted).

Finally, in *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998), the Circuit again affirmed the district court's grant of summary judgment to the defendant on the plaintiff's "retaliatory harassment" claim where the plaintiff failed to demonstrate that her supervisor's conduct amounted to an adverse employment action.  *See id.* at 533.  The plaintiff in *Sanchez* alleged that her supervisor, in retaliation for plaintiff's filing an EEOC complaint, made several ageist remarks; required her (but no one else) to bring a doctor's note when she was sick; threatened to write her up for insubordination; and threatened to put her on a plan for improvement. *See id.*  Analyzing these allegations, the Circuit stated:

This conduct simply does not rise to the level of a materially adverse employment action sufficient to satisfy the second prong of the prima facie case. Courts considering the issue have held that "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments'" such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.

. . . . It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

*See id.* (citations and quotations omitted).

Unlike the factual contexts of the cases described above, here there is no evidence that anyone was unpleasant or vulgar to plaintiff. There is no evidence that anyone made demeaning or derogatory comments to plaintiff or about plaintiff. Plaintiff alleges only that defendant failed to remedy the discrimination and that Ms. Bingham failed to provide a form that plaintiff needed. Simply put, plaintiff has failed to demonstrate that Ms. Bingham's conduct or any other person's conduct altered his employment in any way. In the absence of such evidence, the court cannot conclude that plaintiff was subjected to conduct that was severe or pervasive enough to constitute an adverse employment action. Thus, because plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that he suffered an adverse employment action, summary judgment in favor of defendant is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 46) is granted and plaintiff's complaint is dismissed in its entirety.

17

**IT IS SO ORDERED.**

Dated this 10th day of May, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge